Good morning. Our next case for today is case number 416-0446, and it is Roy v. Sackman. For the appellant, we have Mr. Schellest, is that how you pronounce it, sir? Schellest. Schellest, okay. And then for the appellee, we have Mr. Bradley. You may proceed, counsel. Schellest. On this cloudy day, may it please the court, I'm Sam Schellest. I represent the defendant. Having had the benefit of listening to the last argument, let me start with the standard of review. If the judge had used the proper factors, it would be abuse of discretion. But it is de novo because he used improper factors and told us the factors he used. But even if it is abuse of discretion, the court below abused its discretion. Even on my learned friend's argument, he says the two elements, and we agree, for abuse of discretion are whether there was bad faith, in other words, you intentionally said something to the jury you shouldn't have said, and secondly, whether it was deeply prejudicial. And those standards is met. First, the comment that was made was doubly untrue. The fact that somebody is taking a prescription drug legally from a doctor does not mean they're under the influence or that they admit being under the influence. Well, counsel, I'm thinking back to the record and how that question was phrased to your client at the deposition. How does that impact our inquiry here? It doesn't because the witness answered what she was taking. She was never asked the dosage. She was never asked her weight. And attorney Holder never followed up by subpoenaing Walgreens or the medical doctor to test whether this drug was appropriate. So when your client was asked, and I may not have it exactly right, but were you under the influence of any drugs or medication or something like that, and your client responded in the affirmative, correct, and then went on to state the exact drug that she had a prescription for and had taken prior to the accident, right? The problem, yes, the problem is the words under the influence to a jury mean high or drunk. Let's be straight about this. When you tell a jury somebody is under the influence, that's something different than asking a question in a deposition. And in answering the question, she never followed up. All the person said is I'm taking a perfectly legal prescription drug. If attorney Holder intended to really prove under the influence to a jury, she would have subpoenaed Walgreens. She would have subpoenaed the medical doctor. She would have supplied true information that the dosage was too high or too low or that the person shouldn't have been driving with this drug. So your basic position is that while a layperson, your client said, yes, I was under the influence, that's not sufficient to present that to the jury because there's no expert testimony to actually prove that. Is that your point? That is my point in part. But even more, counsel cites a case where a policeman was at the desk and somebody comes up and she's wavering or weaving and smells of liquor and the court said, well, you don't need an expert. It seems fairly obvious somebody can testify to that. There's none of that here. There's nobody that said she was doing that. And let's look at the explanation that attorney Holder gave, which, by the way, is going to the standard. Even the trial judge said, I don't buy this, that it's simply untrue. Attorney Holder said, well, it could prove impact speed. How on earth does whether she took a prescription drug prove speed? Attorney Holder said, well, it could prove it might have impaired her reaction time. Attorney Holder is not a doctor of law. She's a doctor of law, not a doctor of medicine. There's no evidence that this drug impairs reaction time on this record. It might make it better. I don't know because there's no evidence to that effect. Attorney Holder said, we all know this drug is a narcotic. With all due respect to attorney Holder, we don't know that because she introduced no evidence of it. Her other explanation, which was one of her worst, and the trial judge mentioned this, well, I'm using this to rebut argument of no injury. Now, let's think that through. She says somebody is taking a prescription drug, and I was saying, well, she was, under the influence, and she was going to use that to rebut an argument of no injury. That is a ludicrous statement. And the trial judge called her out and said, I don't believe you. I know what you were trying to do. And I think the cases are clear. She is using a sly innuendo to tell the jury something that just wasn't true. Under the influence means something. So if we assume you're right, was it cured? No. First of all, for it to be cured, the jury would have to be told the statement wasn't true, and that the admission wasn't true. All she admitted was to taking a prescription drug in, like your honors question, in a person-to-person question. So, of course it wasn't cured. Once this happened, the jury was irreparably prejudiced. And I want to mention, the cases are clear that talking about drug use or intoxication is so deeply prejudicial, it can't be fixed. In addition, there's a case we cited, when you say it in the opening statement, when the jury is particularly paying attention, the rest of the trial is meaningless because nobody is paying attention to anything else. Now, I realize we can't interview the jurors, but you certainly have circumstantial evidence that they gave a verdict 17 times the special damages, and almost double what they even asked for. If that's not an outraged jury that heard somebody was high or drunk, I don't know what is. I mean, we're all practical people. That's what that jury heard. And I understand if the judge used the right standard, there's an abusive discretion standard, but let me talk about what he did say. During the hearing on the post-trial, he spent an enormous amount of time talking about the insurance policy, that the lawyer was paid by insurance, and they should have tendered the policy, and this is their fault. Again, with no disrespect to the trial judge, that's an outrageous thing to say, and it has nothing to do with the standard that this court has asked to review. And he never should have said it, and it has nothing to do with whether there was a fair trial. Then he said, well, he all but said, I would have granted a mistrial if the defense lawyer had insisted. That was the word he used. If the lawyer had insisted, that blames the victim for the mistrial. Was one requested? No, there was an objection. Okay, so are you saying that the court should have sua sponte, just declared a mistrial? In this case, yes. And certainly in the alternative, granted the post-trial for a new trial. One of two. The other thing is, I think I cited a case that they did preserve their objection by making the objection to ask for a new trial. So, yes, and here's why. The trial judge all but admitted when he said to Miss Holder on the record, are you trying to cause a mistrial? What is it you're doing? He knew, and here's why it's also important. If this had been the fifth day of a two-week trial or something, there was nothing to balance here. The voir dire had just begun, and the jury was impaneled. The court could have declared a mistrial, charged Miss Holder with the expenses, started a new voir dire, and gone on with the trial with very little time and expense to the court system. This was the opening bell of the trial, not the last day. So, yes, I think the judge should have done that. But in saying that the victim of misconduct didn't insist upon his rights, in other words, demand a mistrial at that moment, switches the argument away from the person whose misconduct is at issue to the lawyer for the defense. Would I have tried the case the same way? Probably not, but I don't think Miss Holder would have done this with me. I wouldn't have tolerated it. It was outrageous. Third, there was no clear curative instruction given. I don't think you could give one, and that's one of the cases we cited, but there was no clear curative instruction. We had the instruction that opening statements are not evidence. Judge, that's such a vague statement that's part of a big standard 101 IPI that I don't think that's sufficient. But it was given, correct? Yes, YPI 101 was given, but that's not sufficient to take care of something this far outside of where we're supposed to be. There are certain statements that people say about other people, criminal convictions, being drunk or under the influence or intoxicated, that are so clearly prejudicial under the law that they can't be cured. And I think what's so outrageous here is when I was hired to write the appeal, I didn't try the case, I assumed that Miss Holder was going to say she made a mistake. Miss Holder didn't say she made a mistake, and with all due respect to counsel, their brief doubles down on what they said and tries to justify it. There is no way a jury could have interpreted the words under the influence and admitting to be under the influence except that this lady, my client, was drunk or high. We had a recent case where a judge declared a mistrial, sua sponte. Nobody was happy. The party that was offended by the conduct or could have been damaged or prejudiced by the conduct didn't want a mistrial. So skipping or not getting to the post-trial aspect of it, your contention is this statement is so egregious that you've got to do it. And right at the beginning, rather than waiting to see how the case is going to turn out or the result or having in the back of your mind as a trial judge, I can take care of this later. That's exactly right, and here's why. The trial judge, just as you judges stand, independent of people's strategy, independent of the parties, but as a guardian of a fair trial. And one of the cases I cited, I think it was Villalaga, which said, you know what? We're not sure that the judge violated the standard that applies here, but we're still going to reverse because the party did not receive a fair trial because of the emphasis on drinking. So the issue, as Your Honor stated, is did the party receive a fair trial and the judge at the beginning of the case saw that that wasn't possible anymore? To follow up your question, Justice White, how could we give a curative instruction? We would have to tell the jury that the statement she was under the influence was untrue or the statement that she admitted to being under the influence was untrue and the attorney didn't tell the truth. And that also goes into bigger issues that it's not possible to cure this kind of a statement in the beginning, as Your Honor stated. There was nothing to balance. If this had been the sixth day, I could see where a court would say we've invested a lot of time. The other thing is on the sixth or seventh day, the jury has an impression of the lawyers, of the judge, of the witnesses, and this is one part of the piece. On the first day, there's nothing else to impress because she said what she said. And it's so deeply prejudicial because it is one of those two things, both criminal convictions and drinking, or in this case drugs, that are so deeply prejudicial that it can't be cured. And I think the judge should have granted a mistrial whether the parties are happy or not because the fact is his job is to preside over a fair trial, and that was prevented by misholding. The other thing is, and I... If you don't ask for a mistrial, do you have an obligation to ask for a curative instruction? And it would be non-IBI. You'd have to think of it. What would be the disadvantage to the defendant in asking the court to instruct the jury that the defendant here was taking a prescribed, lawful medication, and we expect no evidence to be presented regarding that affecting her faculties, and she's admitted fault because she reached for a cell phone or whatever her reason was? I think that is a possibility. Somebody could have said that. I think, though, that entering into the issue of taking a prescription drug in combination after what Ms. Holder said was... But that wouldn't have been my... If I were trying the case with all due respect, I wouldn't have done that because my attitude as a trial lawyer is none of this should be before the jury unless there's evidence that taking the prescription drug affected what she did. And even with that instruction, that curative, I think average people would say, well, she's taking a prescription drug. She's not paying attention. She dropped something. But she admit liability. Well, I understand... So now isn't the prejudice removed? No, because... Because 8 out of 12 people in the jury are taking a prescription drug. Yes, but unfortunately... Depending on their age group. Well, depending on their age group. I don't, but... Good for you. Good for them. I'm very proud of that. I'd have to say no because the way that the statement was made by Ms. Holder was so deeply prejudicial. I don't think you can cure it. Because let's say she had said, and she shouldn't have, but giving his, or plating the devil's advocate. Let's say she had said, ladies and gentlemen of the jury, the defendant has admitted to taking this prescription drug. Let's just say she had said that. That's a less malicious statement to make. But by saying under the influence, I don't know how that can be cured except to tell the jury she didn't tell the truth. And the judge obviously, most judges are not going to do that because I think that also would require a mistrial. And that's why there was no balance at this point, especially because the voir dire had just finished and it was the opening statements. I've tried cases. We all have where you go on for days and days and there are mistakes. And judges say, oh, for gosh sakes, this is a minor issue. Let's move on. This wasn't a minor issue. And what is, I think, most offensive is the explanation she gave. Because the explanations are outrageous. They have nothing whatever to do with what's going on. If she had tied together and taken 213s and Discovery and said this dosage was inappropriate or you're not supposed to be driving with this prescription drug, then this would be an entirely different case. But one of the other things that she said is the defense counsel should have known this testimony was possible and should have brought a motion in limine. No lawyer can bring a motion in limine to prevent all misconduct before it happens. Why would the defense lawyer imagine that a lawyer would say this? And I think we all know the reason. She intended, as the case we cite, for the innuendo to be a coiled malevolence in the eyes of the jury, in the ears of the jury. In the back of their mind for the whole trial, that lady is drunk or high. That was what she intended. And she succeeded. Because we look at the verdict, it's 17 times the special damages. It's double what she asked for. What other explanation do we have? So for these reasons, counsel's argument throughout this case is that there are two things. And that abusive discretion applies. One is, was there misconduct? And was it malicious or intentional? And second, was it deeply prejudicial? I'm uncertain why he would raise that because it's clearly deeply prejudicial. And the misconduct was clearly intentional because Ms. Holder said it was. As to the legal standard that the judge used, as I've indicated, I think he, for unknown reasons, spent most of the time talking about insurance. To follow up Justice's next question, he also said, well, what about trial strategy? In other words, was the defense lawyer using a trial strategy? And, again, I think that blames the victim for what Ms. Holder did. I hate to finish earlier than my time, but I have very little else to add. The misconduct here was intentional. It was malicious. It was unfair. This was not a fair trial. And for that reason, at least the post-trial should have been granted. And we ask you to reverse and remand and order a new trial, at least on damages, so that my client has a fair chance to have her case heard in court. I apologize for finishing early. If you have no questions, I'll sit down. No apology necessary. Thank you, Mr. Schellas. We'll have time on rebuttal if you'd like. Mr. Bradley? Thank you. May it please the Court, my name is Ryan Bradley. I represent Mrs. Roy. This was not a perfect trial, but it was certainly a fair trial. There's one thing lacking and prevailing throughout all of the briefing in this case. And that is any case law that is even remotely congruent to the facts that we have here. In every single case cited by the appellate relating to this so-called inflammatory or sly innuendo about being under the influence, every single one of those cases talks about intoxication, not under the influence. Every single one of those cases deals with a situation where motions in limine were filed and then violated. Without a motion in limine filed at all, it's almost impossible to put onto misholder any type of bad faith. I don't understand it. If liability is admitted, what does the condition of the offending driver have to do with damages? The explanation that Miss Holder gave, and which the court accepted, maybe didn't like, but accepted in its sound discretion, was that she was trying to prove that for whatever reason, the drugs that were taken would have slowed reaction time. That's where she was going to go. Now, there was an objection made, and it was sustained, and that it was never brought up again. Well, like Justice Knecht, I don't really understand why is there the need to even get into reaction time and all this if the person has admitted liability. It's simply about what damages were incurred. That's correct. In this case, liability, as it says in the record, was admitted the day of the trial, first of all. Secondly, there was a strong defense that was going to be made that this was a low-impact collision. The time in which somebody brakes, the time that they have to apply the brakes and reduce the speed, was going to come into play, because the impact speed was going to be a key issue. If liability had not been admitted? Even when liability was admitted, because this was a case of the defense saying low-impact collision couldn't have resulted in these damages. So that is... You prove whether it was a low-impact collision by the collision, not by what was going through the driver's mind or in their synapses. I mean, accident reconstruction, the physical evidence shows whether it has more viability in showing what occurred rather than something speculative about the action time. I guess what I'm thinking about, counsel, is did Ms. Holder have what was necessary to tie this up? I mean, we just have this very damaging prejudicial statement and nothing to back it up in terms of what opposing counsel was saying in demonstrating the dose that she was taking, what effect, if any, this dose would have on her driving. Should she be driving, taking that medication? I mean, it just seems to be clearly unsupported. Well, that is where the dichotomy between intoxication and under the influence comes in. There is case law in Illinois that we pointed out in our brief in Wade and Doria that sets out unequivocally expert testimony is necessary to prove intoxication. She didn't say intoxication. No, but under the influence could also mean pot. And that might bother the jury more than alcohol or whatever else you could be under the influence of. Well, the statement wasn't finished because there was an objection. And there is some doubt as to whether the proper objection was even made here because the objection was general. It was not a specific objection to prejudice. So a general objection preserves relevance, not prejudice. There's a lot of other issues that are involved with whether or not we should even be here, not the least of which is that in commenting on the size of this verdict and on commenting on which jury instructions were used, there was no objection to any of the jury instructions. Defense counsel agreed. They didn't offer curative instruction. They didn't offer a non-IPI instruction that they liked. They didn't raise this until the appeal. The only objection that was made during the course of this entire process was a single objection on a general ground in the opening statement. No other mention of this issue was made until the end of the trial where the defendant did not get the result that they had hoped for. Exactly how much of the statement did Ms. Holder get out?  Under the influence, the objection came in. She immediately stopped. Well, it's pretty clear, though. The court knows what the objection's about. I mean, that's demonstrated at the beginning and demonstrated at the end. I think that the court may have known what the objection was about, but as far as preserving the record to come up on appeal, there are certain things that you need to do. There was just saying in a, you know, it's almost evidence 101. When you say objection, you say why. Never happened. Just objection. Now, again, going to this notion that we're at a de novo review, Judge Jones specifically articulates the exact issues that he's determining. And then for eight pages of transcripts, goes over all of the facts. Goes over every reason why he made the decision that he made. It's clear that the abusive discretion standard applies here. So whether or not we agree in Ms. Holder's trial tactics or her statements or what she was going to try to prove with speed, all of that is secondary to deciding whether or not Judge Jones abused his discretion in deciding the way he did. So, yes, there is case law that says intoxication is prejudicial, but there is a difference between the two. She didn't say that evidence will show that Ms. Saxman was intoxicated. She couldn't say that. She would have needed expert testimony to say that. But I don't like drawing attenuated hypotheticals about what could have been, but it is quite possible that Ms. Holder could have asked Ms. Saxman while she was on the stand, is it true that you take prescription hydrocodone? Do you find that when you take this drug, you're a little slower and a little groggy? And Ms. Saxman herself could have testified to the fact that she was, and that would have been enough to establish under the influence. Not intoxication, but under the influence. But doesn't that bring about the point that in not giving her that opportunity to address taking the prescription and what, if any, effect it had on her, it was even more prejudicial because she simply said she admitted she was under the influence. And that is where the judge at his discretion determined that sustaining the objection was the proper course. And that is where, as he says in his well-reasoned holding, that he can't lawyer for the lawyers. So the objection was made and it was sustained. And that fulfills his duty as the gatekeeper. And that fulfills his duty in order to bring this case under the abusive discretion standard. If defense counsel had wanted a further explanation to the jury, as Judge Jones reasons in his opinion, he could have asked for it. Judge Jones would have given it. In fact, he said roughly what he would have said, but all that would have done, in Judge Jones's opinion, is put more weight on this issue. Now, was the statement a mistake from my opinion, from our opinion, from what we're looking at? It could be construed as a mistake. We don't have to agree with the underpinnings of the logic of why those words came out of her mouth. If, yes, it was intentional, you can't accidentally speak. It wasn't like she choked. So, yes, it was intentional. She meant to talk. I agree with that. But as far as bad faith is concerned, it is nearly impossible to put on that statement bad faith when there is no violation of a motion to eliminate, when we have no case law that's even remotely close to the situation. But it's only one of the reasons it's not remotely close in your mind is because of the distinction you make between intoxication and under the influence. And I understand the presence of the motion to eliminate in the other cases. Right. Those are the two primary reasons that distinguish this matter from those. Okay. Let's say we disagree with you on, we say under the influence is the same. Do you lose? I still don't think that we lose because the question isn't whether or not the motion is appropriate. It's whether or not Judge Jones abused his discretion in finding it wasn't. So, this is not that over. Or finding it was, but it didn't have an effect. Well, that would go to the substantial prejudice complaint. Yeah. So, as far as that's concerned, we don't have to agree with what went down. We don't have to say this was a perfect trial. It clearly wasn't because we're here. All we have to do is determine that for the 46 pages of reasoning that Judge Jones laid out, he didn't abuse his discretion. He weighed this issue properly. He looked at the prejudicial value of the statement. He weighed it against the tactics that the defense attorney was incorporating throughout this trial, and he reached a decision. So, it comes down to this notion that there is a difference at the end of the day between intoxication and under the influence. And that's a legal difference. It's outlined by the courts in this state. And the way that the appellant wants to sort of paint in broad strokes that any mention of the term under the influence is going to set the jury off, well, as he points out in his argument, we have no way of knowing what the jury thought. Yes, this was a large burden. We hear those commercials about drinking and driving and team drinking. It says, keep them under your influence. I mean, we know what the inference is from that. Well, and that's true. But I cannot and the court cannot, nor do we need to to decide this case, put ourselves in the mind of the jury. We have to put ourselves in the mind of Judge Jones to figure out whether he abused his discretion. The secondary aspect there, and what is not referenced at all in any of the appellant's briefing, is the fact that we have medical testimony that says that this woman will likely be impacted by this injury for the rest of her life, and that she was active before, and that now she can't be, and that her husband has to pick up a great deal of slack. And Judge Jones goes to great lengths to say, yes, this is a large verdict, but we have medical testimony that shows she was severely impacted. So can we really split the kitten and say the only reason for this large verdict is because way back in opening, the term under the influence was mentioned and then corrected? I don't think we can make that jump, and I don't think we need to make that jump, because Judge Jones explains why he came to the decision he made, and he did not abuse his discretion. Thank you. Thank you, counsel. Any rebuttal, Mr. Schellest? Very briefly, counsel acknowledged that Judge Jones said that if he had tried to give a curative instruction, it would have made the situation worse. Counsel admits that. It's not fixable, because this was a disaster made by Ms. Holder. Second, your question, Justice White, when you look at the record, she said the defendant was under the influence and admitted to being under the influence. She said both, and I think the record on that is clear. Counsel again says this relates to low impact or high impact. As your Honor stated, it has nothing to do with that. If she was high as a kite, that would have nothing to do with how the impact was one way or the other. And as your Honor said, there's no medical evidence to tie this drug or the prescription or the dosage to anything of her conduct. And Ms. Holder never had any such evidence. She never did any discovery, because she never intended to introduce it. If she had done discovery, that would be a different story. She never intended to introduce it. She intended to give an innuendo to the jury that this person was under the influence or intoxicated. That's what she intended, and that's what she got away with. And it's an unfortunate thing, but she shouldn't be rewarded for it. Finally, Judge, in terms of the sidebar, at the time of the objection, they went in back for a sidebar. Although that wasn't recorded, during the post-trial, Judge Jones repeated what he said to Ms. Holder. He said, are you kidding? What are you doing? Are you trying to cause a mistrial? He knew exactly what she was trying to do and why she was trying to do it, and he called her out on it. Unfortunately, it didn't result in a mistrial or a new trial on the post-trial motion. It wasn't a fair trial because Ms. Holder injected something that she shouldn't have injected, and she did it for a purpose. We ask for the reverse. Thank you for your attention, and we appreciate the opportunity to have orally argued today. Thank you, counsel. We'll be in recess. We'll take this matter under thought.